UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

A NTHONY T. M C G OWAN,

          Plaintiff,               Case No. 1:20-cv-851

v.                                     Honorable Robert J. Jonker

J OHN J. B EECHER et al.,

          Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.    Factual allegations**

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in

Carson City, Montcalm County, Michigan, and the Cooper Street Correctional Facility (JCS) in Jackson, Jackson County, Michigan. Plaintiff sues the following officials: DRF Resident Unit Manager (RUM) John H. Beecher; DRF Warden Randee Rewerts; JCS Chaplain Unknown Young; JCS Acting Warden Unknown Floyd; MDOC Director Heidi E. Washington; and MDOC Special Activities Director David M. Leach.

Plaintiff alleges that he is a practitioner of Judaism. He was approved for the Jewish religious diet in August 2018. Plaintiff was housed at DRF from December 20, 2018, to January 2, 2020.

Yom Kippur, the Jewish Day of Atonement, was celebrated in 2019 from the sundown on October 8 until sundown on October 9, and Plaintiff's religion required him to fast during that period. Plaintiff alleges that he was on the schedule to pick up his fasting meal in the morning hours of October 9, 2019. When Plaintiff arrived at food service to pick up his meal on October 9, he was informed Plaintiff that food service had issued the fasting meal bags the prior evening. Plaintiff therefore went without food until the morning of October 10, 2019.

Plaintiff acknowledges that fasting meals were handed out on October 8 and that he was in the dining room on that date. Plaintiff asserts, however, that his itinerary indicated that he was supposed to pick up his meal on October 9, not October 8. Plaintiff filed a grievance on October 10, 2019, complaining that he had been denied his fasting meal on October 9. The Step-I grievance responder denied the grievance, concluding that Yom Kippur meals were provided on October 8, 2019, and that Plaintiff had come through the dining room and received breakfast, lunch, and dinner meals on October 8, 2019, as well as breakfast and dinner meals on October 9, 2019. (Step-I Grievance Response, ECF No. 1-4, PageID.20.) Plaintiff disputes the statement that he received meals on October 9.

2

Plaintiff appealed the grievance to Step II.  On December 11, 2019, Defendant Rewerts upheld the Step-I determination.  Defendant Rewerts concluded that Plaintiff had failed to complete his fast by eating breakfast on October 9, 2019.  Rewerts indicated that, under policy, Plaintiff would be referred for counseling with the chaplain about conforming his conduct to religious dietary requirements.  (Step-II Grievance Response, ECF No. 1-6, PageID.24.)

Plaintiff again appealed the denial of the grievance.  At Step III, Richard Russell, the manager of the grievance section, denied the appeal on February 24, 2020, for the reasons stated below.  (Step-III Grievance Response, ECF No. 1-8, PageID.29.)

On December 20, 2019, Plaintiff was informed at the Security Classification Committee meeting that he would be transferred to another facility.  Plaintiff sent a kite to Defendant Beecher, asking Beecher to remember that Plaintiff was on a kosher/vegan meal plan and should be sent to a facility with a kosher meal program.  (DRF Kite, ECF No. 1-7, PageID.26.) Plaintiff was transferred from DRF to JCS on January 2, 2020.  JCS does not have a kosher meal program.  Plaintiff contends that the transfer was vindictive.

On January 3, 2020, Plaintiff sent a kite to Defendants JCS Chaplain Young, JCS Warden Floyd, and the MDOC Special Activities Director.  (JCS Kite, ECF No. 1-10, PageID.32.) He filed a Step-I grievance on January 7, 2020. The grievance coordinator contacted Defendant Young that afternoon, and Defendant Young contacted the JCS transfer coordinator and the MDOC central office, requesting that Plaintiff be transferred as soon as possible to a facility with a Kosher meal program.  (Step-I Grievance Response, ECF No. 1-12, PageID.36.)  By the time Defendant Young issued the Step-I grievance response on January 9, 2020, Plaintiff already had been moved to another facility.  (Step-I Grievance, ECF No. 1-11, PageID.34.)  Plaintiff therefore spent less than one week at JCS.

Plaintiff argues that Defendants' denial of his kosher fast bag on October 9, 2019, and his transfer to a prison with no kosher meal program deprived him of his right to exercise his religion, in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a). Plaintiff also alleges that the denial of his fast bag deprived him of necessary food, in violation of the Eighth Amendment. Finally, he contends that Defendants Beecher and Rewerts transferred him to JCS, knowing that it did not have a kosher meal program, in retaliation for Plaintiff having filed a grievance about his denial of the snack bag.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994)

### III. Denial of Grievances and Failure to Supervise

Plaintiff fails to make specific factual allegations against Defendants Leach, and Washington other than his claim that they failed to correctly respond to his grievances or to supervise their subordinates. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300

5

(6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Leach and Washington engaged in any active unconstitutional behavior.

Moreover, to the extent that Plaintiff suggests that he had a due process interest in the correct resolution of his grievances, he fails to state a claim. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' inadequate handling of his grievance or incorrect findings in his grievances do not violate due process.

Accordingly, Plaintiff fails to state a claim against Defendants Leach and Washington for their handling of his grievances or failure to supervise their subordinates.

## IV.    First Amendment & RLUIPA

Plaintiff complains that he was denied his kosher meal bag on October 9, 2019, while he was housed at DRF. Plaintiff does not identify the person or persons who deprived him of his meal bag, but he contends that the denial deprived him of his rights under the First Amendment and RLUIPA. Plaintiff also contends that Defendants Rewerts and Beecher, in their

6

capacities as Warden and Resident Unit Manager, respectively, were or should have been aware of his religious-meal accommodation and were responsible for Plaintiff's transfer from DRF to JCS, a prison without a kosher meal program. Plaintiff alleges that JCS Defendants Chaplain Young and Warden Floyd failed to ensure that Plaintiff was moved out of JCS immediately after receiving word that Plaintiff required placement in a prison with a kosher-meal program. Plaintiff contends that Defendants Rewerts, Beecher, Young, and Floyd violated his rights under the First Amendment and RLUIPA, because their conduct resulted in his being deprived of kosher meals for one week, from January 2 through January 9, 2020.

The Free Exercise Clause of the First Amendment to the United States Constitution provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I; *see also Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) (holding that the Fourteenth Amendment incorporates the First Amendment's protections against states). While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Prison officials may impinge on these constitutional rights where their actions are "reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are

7

reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

1. does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. are there alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational"). If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484 (citations omitted). It should further be noted that the *Turner* standard is "not a 'least restrictive alternative' test" requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest. *Id.*

In contrast, the RLUIPA, 42 U.S.C. § 2000cc-1(a), which applies to prisons that receive federal funds, prohibits state and local governments from placing "a substantial burden" on the "religious exercise" of any inmate unless they establish that the burden furthers a

"compelling governmental interest" and does so in the "least restrictive" way. 42 U.S.C. § 2000cc–1(a). To establish a cognizable claim under RLUIPA, the inmate must first demonstrate that a prison policy substantially burdens a religious practice. So long as the practice is traceable to a sincerely held religious belief, *see Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005), it does not matter whether the inmates' preferred exercise is "central" to his faith, 42 U.S.C. § 2000cc–5(7)(A). Once an inmate makes this showing, the prison policy survives only if it serves a compelling governmental interest in the least restrictive way. *Id.* § 2000cc–1(a); *see also Haight v. Thompson*, 763 F.3d 554, 559-60 (6th Cir. 2014).

Plaintiff's allegations are insufficient to state either a First Amenment or a RLUIPA claim for multiple reasons. First, Plaintiff utterly fails to allege that any of the named Defendants was responsible for the failure of food-service personnel to give him his religious bag meal on October 8 or 9, 2019, except insofar as he holds them responsible for their failure to supervise others. As discussed, no Defendant may be held liable under § 1983 solely on the basis of vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691.

Second, even had Plaintiff named someone who engaged in active conduct to deny him his fasting meal, Plaintiff's allegations that he was not provided a fasting meal bag on October 9, 2019, and that he was transferred for one week to a facility without a kosher meal plan fail to state either a First Amendment or RLUIPA claim. Plaintiff's limited allegations sound in negligence only. It is well established that negligent conduct will not state a constitutional claim under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986) (holding that the protections of the Due Process Clause of the constitution are not "triggered by a lack of due care by prison officials.") (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner . . . ."), and *Baker v. McCollum*, 443 U.S. 137, 1464 (1979) (holding that false imprisonment does not violate the

9

Fourteenth Amendment simply because the defendant is a state official). Numerous courts have recognized that a prison official's negligent interference with a prisoner's religious diet does not violate the constitution. *See Colvin v. Caruso,* 605 F.3d 282, 293-94 (6th Cir. 2010) (holding that isolated incidents of negligence by prison officials in implementing kosher food requirements is not actionable under the First Amendment); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (isolated acts of negligence in providing kosher diet do not support a free-exercise claim); *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006) ("[Plaintiff] must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983.") (citing *Daniels*, 474 U.S. at 330). Because "negligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause," *Lovelace*, 472 F.3d at 201, Plaintiff fails to state a free exercise claim against Defendants arising out of the 2019 failure to provide Plaintiff with a religious meal bag.

Applying ordinary tort principles, and in the absence of a state-of-mind standard under the statute itself, liability under the RLUIPA also is limited to intentional conduct. *Garrison v. Dutcher*, No. 1:07-cv-642, 2008 WL 4534098, at *6 (W.D. Mich. Sept. 30, 2008) (concluding that the RLUIPA requires a state of mind higher than negligence) (citing *Lovelace*, 472 F.3d at 194). Other courts have agreed. *See Fisherman v. Schaefer*, No. 17-cv-3766, 2019 WL 1086390, at *4 (D. Minn. Jan. 17, 2019) (holding that negligent conduct is not actionable under RLUIPA); *Guillory v. Ellis*, No. 9:11-cv-600, 2014 WL 4365274, at *9 n.10 (N.D.N.Y. Aug. 29, 2014) (same); *Nelson v. Jackson*, No. , 2014 WL 197877, at *13 (S.D. Ohio Jan. 15, 2014) (same); *Carter v. Washington Dep't of Corr.*, No. C11-5626, 2013 WL 1090753, at *14 (W.D. Wash. Feb. 27, 2013) (same). For the reasons set forth in *Garrison*, 2008 WL 4534098, at *6, the Court holds that, to be actionable under RLUIPA, a defendant must engage in conduct with a mens rea higher

than negligence. Plaintiff's allegations concerning the denial of his October 9, 2020, fasting meal bag utterly fail to suggest purposeful conduct that would violate the First Amendment or RLUIPA.

Moreover, although Plaintiff alleges that he sent a kite to Defendant Beecher to ask that his transfer be made to a facility with a kosher-meal program, he alleges no facts suggesting that Beecher acted purposefully in failing to act on the kite or that Beecher even had control over where Plaintiff was sent. Plaintiff's allegations against Defendant DRF Warden Rewerts are wholly conclusory, depending exclusively on Defendant Rewerts' alleged negligence in exercising his authority as warden. As discussed, allegations of supervisory liability fail to state an actionable § 1983 claim. *Iqbal*, 556 U.S. at 676. The allegations also fail to demonstrate purposeful conduct by Rewerts that would support a First Amendment or RLUIPA claim.

In addition, according to Plaintiff's complaint and attachments, JCS Defendants Chaplain Young and Warden Floyd acted promptly upon the filing of Plaintiff's grievance, ensuring that he was transferred to a proper facility within a couple of days of the grievance and one week after his arrival at the facility. Nothing about such allegations supports an inference of purposeful conduct to deprive Plaintiff of his religious rights. Accordingly, Plaintiff fails to state either a First Amendment or RLUIPA claim based on his one-week placement at JCS.

Finally, Plaintiff's claim under RLUIPA fails for yet another reason: he is not entitled to either damages or equitable relief under the circumstances of the case. RLUIPA does not create a cause of action against an individual in that individual's personal capacity and RLUIPA does not permit money damages against a state or its employees. *Haight v. Thompson*, 763 F.3d 554, 568 (6th Cir. 2014). Compensatory and punitive damages therefore are unavailable for any RLUIPA violation.

Plaintiff does not seek prospective injunctive relief, and he is not entitled to such relief, since he has long since been transferred to a prison with a kosher-meal program. Past

exposure to illegal conduct does not, by itself, sufficiently prove that a plaintiff will be subject to the illegal conduct again or present a "case or controversy": if unaccompanied by any continuing, present adverse effects. *See, e.g., Los Angeles v. Lyons*, 461 U.S. 95 (1983); *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609 (S.D. Ill. 1987), aff'd, 854 F.2d 162 (7th Cir. 1988). *See also O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyons*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495-96. In the present action, Plaintiff has made no showing of an official policy or practice which suggests that the alleged activity is likely to occur again. Therefore, the possibility that Plaintiff will be subjected to the same allegedly unconstitutional activity is too speculative to warrant injunctive relief or to deem the alleged activity a continuing violation of federal law.

Similarly, Plaintiff is not entitled to the declaratory relief he has requested. A request for declaratory relief, by itself, does not present a justiciable controversy. Where there is no claimed continuing violation of federal law, no occasion to issue an injunction, and a declaratory judgment would serve no useful purpose, declaratory relief is inappropriate. *Green v. Mansour*, 474 U.S. 64, 73 (1985). In the present action, there is no claimed continuing violation of federal law and no occasion to issue an injunction. Declaratory relief, like injunctive relief, is prospective only. *See Small v. Brock*, 963 F.3d 539, 543 n.2 (6th Cir. 2020) (citing *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019) (holding that, in the absence of a real and immediate threat that the action will occur in the future, a plaintiff is not entitled to declaratory relief)). Moreover, a declaratory judgment would serve no useful purpose. Therefore, Plaintiff's request for declaratory relief, standing alone, does not present a case or controversy warranting consideration. As a result, Plaintiff's RLUIPA claim fails for this additional reason.

12

For all these reasons, Plaintiff has not stated and cannot state a viable First Amendment or RLUIPA claim based on the allegations in his complaint.

## V. Retaliation

Plaintiff makes a conclusory allegation that his January 2, 2020, transfer to JCS, a prison that did not provide kosher meals, was made in retaliation for Plaintiff having filed a grievance about his failure to receive a fasting meal bag on October 9, 2019.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted);

13

*Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening). While in some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Here, Plaintiff merely alleges the ultimate fact of retaliation in this action. Although Plaintiff filed a grievance before he was transferred to JCS, the grievance preceded the transfer by nearly three months. Plaintiff's allegations therefore do not even demonstrate temporal proximity. In addition, Plaintiff has not presented any facts to support his conclusion that any Defendant retaliated against him because he filed a grievance against some other, unnamed person who failed to provide him a fasting meal on a single occasion. Accordingly, Plaintiff's speculative allegations fail to state a retaliation claim.

## VI.     Eighth Amendment

Plaintiff suggests that, by denying him a fast bag on October 9, 2019, Defendants deprived him of his rights under the Eighth Amendment.

"[T]he Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). However, the Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 960, 954

(6th Cir. 1987). Thus, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (same); *see also Berry v. Brady*, 192 F.3d 504, 507-08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, No. 01-17355, 2003 WL 21436162, at *1 (9th Cir. June 16, 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).

In *Richmond*, the Sixth Circuit determined that a prisoner who was deprived of five meals over three consecutive days, and a total of seven meals over six consecutive days, did not state a viable Eighth Amendment claim, because he "does not allege that his health suffered as a result of not receiving the meals." *Richmond*, 450 F. App'x at 456. In *Cunningham*, the Sixth Circuit determined that providing a prisoner only one meal a day for over two weeks was not an Eighth Amendment violation, because the meals provided were adequate to sustain normal health. *Cunningham*, 667 F.2d at 566. Plaintiff does not allege that his health suffered as a result of the deprivation, or that the meals he did receive were inadequate to sustain his health.

In the instant case, Plaintiff alleges that he missed his fasting meal on a single day, causing him to go without food for approximately 36 hours. Such allegations fall well short of the type of a deprivation that implicates the Eighth Amendment. Consequently, Plaintiff does not state

a plausible claim. *See Iqbal*, 556 U.S. at 679 (noting that the allegations must permit an inference of more than a "mere possibility" of misconduct).

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   November 2, 2020          /s/ Robert J. Jonker
                                   ROBERT J. JONKER
                                   CHIEF UNITED STATES DISTRICT JUDGE